# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| D.C., R.M., and T.R., a minor, by J.R., Guardian, | : |
| *Plaintiffs*, | : |
| v. | : CIVIL ACTION |
| | : NO. 5:21-CV-05070-JMG |
| NELSON MARTIN d/b/a LIBERTY RIDGE FARM, LIBERTY RIDGE FARM, EASTERN PENNSYLVANIA MENNONITE CHURCH AND RELATED AREAS, and MENNONITE MESSIANIC MISSION OF THE EASTERN PENNSYLVANIA MENNONITE CHURCH, | : JURY TRIAL DEMANDED |
| *Defendants*. | : |

**FIRST AMENDED COMPLAINT**

AND NOW, come the Plaintiffs, D.C., R.M., and T.R., a minor, by J.R., Guardian, by and through their undersigned attorneys, who file this First Amended Complaint against the Defendants, and in support thereof, state as follows:

**PARTIES**

1. Plaintiff ***D.C.*** is an adult individual, residing in New Jersey.

2. Plaintiff ***R.M.*** is an adult individual, residing in Wisconsin.

3. Plaintiff ***T.R.***, minor, by ***J.R.***, Guardian, ("***T.R.***") is a minor child, residing in Pennsylvania.

4. The Plaintiffs are collectively referred to herein as "***Plaintiffs***."

5. Plaintiffs are identified herein by use of pseudonym due to the nature of the allegations, specifically as victims under the Trafficking Victims Protection and the Racketeer

Influences and Corrupt Organizations Act, and Plaintiffs have reasonable fear of severe harm in proceeding without anonymity.¹

6. Plaintiffs will make Defendants aware of Plaintiffs' identities and Defendants will suffer no prejudice as a result of Plaintiffs proceeding anonymously.

7. At all relevant times, upon information and belief, Defendant NELSON MARTIN d/b/a LIBERTY RIDGE FARM ("*Nelson*") is an adult individual with an address of 152 Flanagan Road, Richland, PA 17087, doing business as the fictitious name of LIBERTY RIDGE FARM.

8. At all relevant times, upon information and belief, Defendant LIBERTY RIDGE FARM ("*Liberty Ridge*") is a domestic fictitious name filed in Pennsylvania under number 4009925, with a principal place of business located at 583 Varner Road and/or Varner Lane, McAlisterville, PA 17049.

9. At all relevant times, upon information and belief, *Nelson* is the principal and/or owner of *Liberty Ridge*. These defendants are referred to collectively as "*Liberty Ridge.*"

10. At all relevant times, upon information and belief, Defendant EASTERN PENNSYLVANIA MENNONITE CHURCH AND RELATED AREAS (the "*Church*") is an entity or organization with a place of business located at 40 Wood Corner Road, Ephrata, PA 17522.

11. Upon information and belief, the *Church* is a regional Conservative Mennonite group with several dozens of congregations and several thousand adherents in Pennsylvania, and other surrounding states.

---

¹ On or about October 19, 2021, undersigned Counsel was informed by former Plaintiff J.D.M. that he received threats from members of the Church related to the allegations contained in the instant Complaint.

12. At all relevant times, upon information and belief, Defendant MENNONITE MESSIANIC MISSION OF THE EASTERN PENNSYLVANIA MENNONITE CHURCH (the "*Mission*") is a domestic non-profit corporation, organized under the laws of Pennsylvania, with a principal place of business located at 40 Wood Corner Road, Ephrata, PA 17522.

13. The Defendants shall collectively be referred to herein as "*Defendants*."

14. Upon information and belief, the *Mission*, among other things, directs the *Church's* missions abroad, in addition to other *Church* activities.

15. Upon information and belief, the *Mission* established *Liberty Ridge* in or about November 2011 as a home for Mennonite boys and young adult male members of the *Church* who were "troubled" and have "special spiritual, emotional, and social needs."[2]

16. At all relevant times, upon information and belief, *Liberty Ridge* runs a home for Mennonite boys and young adult members of the *Church*.

17. At *Liberty Ridge*, there is an approximately eighty (80) acre farm, consisting of chicken houses, cattle and hog buildings, fences, gardens, woodlands, and a shop to build, in relevant part, wooden pallets and fiberglass fence gates.

18. Upon information and belief, *Liberty Ridge* also conducts business as both an intrastate and interstate freight shipping company, operating out of 583 Varner Road, McAlisterville, PA 17049 with a United States Department of Transportation ("*USDOT*") registration number of 3036592.

19. At all relevant times, upon information and belief, the *Mission* is the mission agency of the *Church*.

---

[2] The description of the target residents of *Liberty Ridge* is gleaned from "The Eastern Mennonite Testimony, Selected Articles From The Monthly Publication Of The Eastern Pennsylvania Mennonite Church, June 2014," the self-proclaimed "official organ of the Eastern Pennsylvania Mennonite Church" (the "*Publication*").

20. At all relevant times, upon information and belief, the **Mission** oversees and directs the day-to-day activities of **Liberty Ridge** and/or **Nelson** and/or other housparents.

21. At all relevant times, upon information and belief, the **Church** oversees, directs, and has final authority over all other named **Defendants** herein.

22. At all relevant times, upon information and belief, the **Church** controls and/or has final say over all aspects of the lives and businesses of all of its members, including but not limited to control over their money, jobs, individualism, activities, and all other facts of day-to-day life and business, including those of the **Mission** and **Liberty Ridge**.

## JURISDICTION AND VENUE

23. This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Trafficking Victims Protection Act ("**TVPA**") (18 U.S.C. §§ 1589 *et seq.*) and the Racketeer Influences and Corrupt Organizations Act ("**RICO**") (18 U.S.C. §§ 1961 *et seq.*).

24. This Court has supplemental jurisdiction over all asserted state law claims pursuant to 28 U.S.C. § 1367 because all state law claims are so related to, and arise from, the same common nucleus of operative facts from which the federal claims arise and, therefore, they form part of the same case or controversy under Article III of the United States Constitution.

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) since **Defendants** **Church** and **Mission** have their principal places of business within this District.

## FACTS COMMON TO ALL PLAINTIFFS

26. As stated above, at all relevant times, **Liberty Ridge** is home for Mennonite boys and young adult male members of the **Church** within **Defendants'** Mennonite community who

were deemed by **Defendants** to be "troubled" and to have "special spiritual, emotional, and social needs" ("**Residents**").

27. At all relevant times, the named **Plaintiffs** herein were Residents.

28. The Residents and their families are told that **Liberty Ridge** "is an intense spiritual atmosphere for the purpose of effecting social and behavioral changes in the lives of the troubled boys in a structured, closely supervised homelike setting." *See* the Publication.

29. Upon information and belief, at all relevant times, the Residents and/or their families are required by **Defendants** to pay approximately $2,300.00 per month to attend **Liberty Ridge**.

30. The Residents were not compensated by **Defendants** for their labor.

31. At all relevant times, **Liberty Ridge** was running multiple profitable business ventures for **Defendants**, including but not limited to the farming of chickens, cattle, and hogs, building fences, gates, and wooden pallets, and a trucking company utilizing the unpaid labor of the Residents.

32. **Defendants** retained all monies earned from the labor of the Residents.

33. The Residents worked every day of the week except for Sundays with no days off; but sometimes they even worked Sundays.

34. At all relevant times, the general schedule at **Liberty Ridge** was that unless the Residents were eating their meals, sleeping, studying the Bible, or performing their daily exercise, they were performing labor at **Liberty Ridge**.

35. Most days, the Residents woke up at or before 6:00 AM, performed labor (or, when relevant, their consequences) from approximately 8:00 AM through 12:00 PM, then again

from approximately 1:30 PM until 6:00 PM, and often again from 7:00 PM until sun-down depending on the time of the year and when the sun went down.

36. Many of the school-aged Residents were not engaged in any schooling while at ***Liberty Ridge***.

37. At all relevant times, there was a main house parent ("***House Parent***") who supervised the activities within ***Liberty Ridge***.

38. The House Parent was supervised by and answered directly to ***Defendants***.

39. Each Resident, at all times, had a mentor ("***Mentor***") who was a young adult male within ***Defendants'*** Mennonite community who was considered by ***Defendants*** to be in "good standing" with ***Defendants***.

40. The Residents were required to be with their Mentors all day and night, and at all times, including when they were sleeping.

41. If the Residents did not do what the House Parent or Mentors told them to do, did not perform their work to the satisfaction of the House Parent or Mentors, did not work hard enough, did not perform their exercises, or run fast enough, or were deemed to have acted "against the Bible," the Residents would receive "consequences."

42. Consequences would last from hours, to days, to weeks, depending on for how long ***Defendants*** decided to punish the Residents.

43. Residents were sometimes not allowed to eat until they completed their consequence task, and other times were put on a restrictive diet, such as only being provided a limited amount of rice and beans and a restricted amount of water, until they completed their designated consequences.

44. Most times, consequences were performed from sun-up to sun-down each day.

45. Some consequences included, but were not limited to, dragging chains over their shoulders, breaking boulders into tiny pieces by hand with a small hammer, and digging out stumps by hand.

46. Other times, the Mentors would physically restrain the Residents, sometimes utilizing multiple Mentors to hold the residents face-down on the ground, restrain their arms and legs behind the Residents in a hog-tied position, utilize zip-ties to restrain the Residents, and even tie up the Residents and drag them.

47. Additionally, **Liberty Ridge** would withhold medical and/or psychiatric treatment and/or medication(s) from the resident(s).

48. The Residents suffered both physical and mental abuse by **Defendants** while at **Liberty Ridge**.

49. **Defendants** would threaten Residents with abuse, including but not limited to the above-mentioned consequences, being excommunicated from the **Church**, and excommunicated from their families if they attempted to leave, or even just spoke of leaving, **Liberty Ridge**.

50. **Defendants** even threatened Residents with legal process and/or police action if they attempted to leave, or even just spoke of leaving, **Liberty Ridge**.

51. **Defendants'** restraints, abuse, and threats against Residents, including **Plaintiffs**, were utilized by **Defendants** to force Residents to comply with **Defendants'** demands, including forced labor for **Defendants**.

**Facts common to D.C.**

52. **D.C.** was adopted by a Mennonite family.

53. At all relevant times, **D.C.** was a minor who, along with his family, was a member of the **Church**.

54. **_D.C._** was first placed at **_Liberty Ridge_** by the **_Church_** in approximately 2011 when he was approximately fourteen (14) years old and remained at **_Liberty Ridge_** until approximately 2014 when he was approximately seventeen (17) years old.

55. **_D.C._** worked at **_Liberty Ridge_** six (6) days a week, except for Sundays.

56. **_D.C._** worked at **_Liberty Ridge_** more than forty (40) hours a week.

57. Despite being school-aged, **_D.C._** did not receive any schooling for the first several years that he resided and worked at **_Liberty Ridge_**.

58. **_D.C._** was never compensated for his work at **_Liberty Ridge_**.

59. **_D.C._** and/or his family were required to pay **_Liberty Ridge_** monthly.

60. **_D.C._** was physically restrained by **_Defendants_**, including but not limited to, by tying him up with zip ties on his hands and wrists for at least thirty (30) minutes.

61. **_D.C._** was disciplined and/or punished with consequences by performing labor-intensive work with limited-to-no food and/or water for extended periods of time.

62. **_Defendants_** withheld medical and/or psychiatric treatment and/or medication from **_D.C._** despite being prescribed by a physician.

### Facts common to R.M.

63. **_R.M._** was adopted by a Mennonite family.

64. At all relevant times, **_R.M._** was a minor who, along with his family, was a member of the Nationwide Fellowship, another branch of the Mennonite Church.

65. When **_R.M._** was approximately fifteen (15) years old, he was sent to reside with a family in Illinois, who were members of the **_Church_**.

66. **R.M.** was first sent from Illinois to *Liberty Ridge* by the *Church* in approximately the fall of 2011 when he was approximately sixteen (16) years old and remained at *Liberty Ridge* until approximately the fall of 2012 when he was approximately seventeen (17) years old.

67. **R.M.** worked at *Liberty Ridge* six (6) – seven (7) days a week.

68. **R.M.** worked at *Liberty Ridge* more than forty (40) hours a week.

69. **R.M.** was never compensated for his work at *Liberty Ridge*.

70. **R.M.** and/or his family were required to pay *Liberty Ridge* monthly.

71. **R.M.** was restrained by *Defendants*, in that **R.M**. was unable to leave Liberty Ridge.

72. **R.M.** was disciplined and/or punished with consequences by performing labor-intensive work with limited-to-no food and/or water for extended periods of time.

### Facts common to T.R.

73. At all relevant times, **T.R.** resided in Pennsylvania.

74. **T.R.** was first placed at *Liberty Ridge* by the *Church* and members of his family who were also members of the *Church* when he was approximately fourteen (14) years old in approximately 2020 and remained at *Liberty Ridge* until he was approximately fifteen (15) years old, in approximately December of 2021.

75. **T.R.** was placed at *Liberty Ridge* without his parent(s)' knowledge or consent.

76. Upon information and belief, **T.R.** was sent by *Defendants* to reside with a Mentor in or about December of 2021 and to continue performing labor for *Defendants*.

77. **T.R.** was sent to live with an unknown third party(ies) without his parent(s)' knowledge or consent.

78. **T.R.** worked at *Liberty Ridge* six (6) days a week, except for Sundays.

79. *T.R.* was never compensated for his work at *Liberty Ridge*.

80. Parent(s) of *T.R.* was(were) not allowed contact with *T.R.* while he was at *Liberty Ridge* and/or *T.R.* was not allowed contact with his parent(s).

81. Because of the foregoing conduct of *Defendants*, the *Plaintiffs* suffered injuries and damages, as outlined herein.

### COUNT I
### Violation of the TVPA for Forced Labor
### 18 U.S.C. § 1589
### (*All Plaintiffs v. Defendants*)

82. *Plaintiffs* incorporate the foregoing paragraphs as though fully set forth herein.

83. This claim is brought under the TVPA pursuant to 18 U.S.C. § 1581 *et seq.*

84. *Plaintiffs* are authorized to bring this civil action pursuant to the civil remedies provision of 18 U.S.C. § 1595.

85. *Defendants* subjected *Plaintiffs* to forced labor in violation of 18 U.S.C. § 1589.

86. *Defendants* knowingly provided or obtained the labor and/or services of *Plaintiffs* by means of force, threats of force, physical restraint, and/or threats of physical restraint to *Plaintiffs*. 18 U.S.C. § 1589(a)(1).

87. *Defendants* knowingly provided and/or obtained the labor and/or services of *Plaintiffs* by means of serious harm and/or threats of serious harm to *Plaintiffs*. 18 U.S.C. § 1589(a)(2).

88. *Defendants* knowingly provided and/or obtained the labor and/or services of *Plaintiffs* by means of the abuse and/or threatened abuse of law or legal process to *Plaintiffs*. 18 U.S.C. § 1589(a)(3).

89. *Defendants* knowingly provided and/or obtained the labor and/or services of *Plaintiffs* by means of a scheme, plan, and/or pattern intended to cause *Plaintiffs* to believe that,

if they did not perform such labor or services, that they would suffer serious harm and/or physical restraint. 18 U.S.C. § 1589(a)(4).

90.     **Defendants** knowingly benefitted financially and/or by receiving anything of value from participating in a venture which has engaged in the providing or obtaining of forced labor or services by any of the means described herein, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of forced labor or services by any of such means.  18 U.S.C. § 1589(b).

91.     As a result of **Defendants'** conduct, **Plaintiffs** have suffered economic damages, for which they should be compensated, in an amount greater than $75,000.00 or any other amount to be determined at trial.

92.     As a result of **Defendants'** conduct, **Plaintiffs** have suffered significant emotional and physical pain and suffering, for which they should be compensated in an amount greater than $75,000.00 or any other amount to be determined at trial.

93.     **Defendants'** conduct warrants this Court's imposition of an amount greater than $75,000.00 in punitive damages against **Defendants**.

94.     Pursuant to 18 U.S.C. § 1595, **Plaintiffs** are entitled to recover damages and reasonable attorneys' fees for **Defendants'** wrongful conduct.

<u>**COUNT II**</u>
**Violation of the TVPA for Human Trafficking**
**18 U.S.C. § 1590**
(*All Plaintiffs v. Defendants*)

95.     **Plaintiffs** incorporate the foregoing paragraphs as though fully set forth herein.

96.     This claim is brought under the TVPA pursuant to 18 U.S.C. § 1581 *et seq.*

97.     **Plaintiffs** are authorized to bring this civil action pursuant to the civil remedies provision of 18 U.S.C. § 1595.

98. In violation of 18 U.S.C. § 1590, and in addition to the violations of 18 U.S.C. § 1589 as set forth above, **Defendants** knowingly recruited, harbored, transported, provided, and/or obtained **Plaintiffs**, by any means, for the purpose of subjecting them to forced labor and/or involuntary servitude.

99. As a result of **Defendants'** conduct, **Plaintiffs** have suffered economic damages, for which they should be compensated in the amount greater than $75,000.00 or any other amount to be determined at trial.

100. As a result of **Defendants'** conduct, **Plaintiffs** have suffered significant emotional and physical pain and suffering, for which they should be compensated in the amount greater than $75,000.00 or in any other amount to be determined at trial.

101. **Defendants'** conduct warrants this Court's imposition of an amount greater than $75,000.00 in punitive damages against Defendants.

102. Pursuant to 18 U.S.C. § 1595, **Plaintiffs** are entitled to recover damages and reasonable attorneys' fees for **Defendants'** wrongful conduct.

## COUNT III
### Violation of RICO
### 18 U.S.C. §§ 1961 *et seq.*
### (Plaintiff T.R. v. Defendants)

103. **Plaintiff** incorporates the foregoing paragraphs as though fully set forth herein.

104. This claim is brought under RICO, 18 U.S.C. §§ 1961 *et seq.*

105. **Defendants** are associated in fact and are an "enterprise" within the meaning of 18 U.S.C. § 1961(4) who, at all relevant times, have been in an ongoing association for the purpose of executing essential aspects of a worker exploitation scheme.

106. **Defendants**, acting as an enterprise, have been engaged in the pattern and practice of human trafficking and forced labor as described in this complaint in violation of, among other laws, 18 U.S.C. §§ 1589 and 1590.

107. The predicate acts of criminal racketeering activity as described in this Complaint constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5), in that **Defendants** repeatedly committed the RICO predicate act of human trafficking and forced labor.

108. Such acts of racketeering activity have been part of **Defendants'** regular way of doing business through the enterprise from at least 2014 through the present, and therefore show a threat of continued criminal activity.

109. **Plaintiff T.R.** is a "person" with standing to sue within the meaning of 18 U.S.C. § 1964(c) because **Defendants** trafficked **Plaintiff T.R.** and forced him to perform labor and/or services without compensation.

110. **Plaintiff T.R.** was economically injured in the amount greater than $75,000.00 as a result of **Defendants'** racketeering practices.

111. **Defendants** regularly moved goods and/or people across state lines and therefore were engaged in interstate commerce.

112. Pursuant to 18 U.S.C. § 1964(c), **Plaintiff T.R.** is entitled to threefold the damages sustained, plus reasonable attorneys' fees and costs of suit.

**COUNT IV**
**Violation of the Pennsylvania Law against Human Trafficking**
**18 Pa.C.S. § 301**
(*All Plaintiffs v. Defendants*)

113. **Plaintiffs** incorporate the foregoing paragraphs as though fully set forth herein.

114. This claim is brought under Pennsylvania Act 105, 18 Pa.C.S. §§ 3001 *et seq.*

115. ***Plaintiffs*** are authorized to bring this civil action claim pursuant to the civil remedies provision of 18 Pa.C.S. § 3051.

116. ***Defendants*** participated in the human trafficking of ***Plaintiffs***.

117. ***Defendants*** recruited and/or maintained ***Plaintiffs*** knowing that they would be subjected to involuntary servitude in violation of 18 Pa.C.S. § 3011.

118. ***Defendants*** knowingly subjected ***Plaintiffs*** to labor servitude in violation of 18 Pa.C.S. § 3012(a) by means of the following:

   a. Causing and/or threatening to cause serious harm to ***Plaintiffs*** and/or their families;

   b. Physically retraining and/or threatening to restrain ***Plaintiffs***;

   c. Kidnapping and/or attempting to kidnap ***Plaintiffs***;

   d. Abusing and/or threatening to abuse the legal process against ***Plaintiffs*** and/or their families;

   e. Taking and/or retaining ***Plaintiffs'*** and/or ***Plaintiffs'*** families' personal property or real property as a means of coercion;

   f. Extortion;

   g. Fraud;

   h. During, through the use of and/or threat to use unlawful force against ***Plaintiffs***;

   i. Debt coercion; and

   j. Using a scheme, plan, and/or pattern intended to cause ***Plaintiffs*** and their families to believe that, if ***Plaintiffs*** did not perform the labor, services, acts, and/or

performances, that *Plaintiffs* and/or their families would suffer serious harm or physical restraint.

119. *Defendants* knowingly benefitted financially and received the value of *Plaintiffs'* trafficking, namely, of their labor and services.

120. Pursuant to 18 Pa.C.S. § 3051, *Plaintiffs* are entitled to actual damages, compensatory damages, and punitive damages in an amount to be determined at trial and any other relief deemed appropriate.

121. Pursuant to 18 Pa.C.S. § 3051, *Plaintiffs* are entitled to treble damages of actual damages as *Defendants'* acts were willful and malicious.

122. Pursuant to 18 Pa.C.S. § 3051, *Plaintiffs* are entitled to injunctive relief.

## COUNT V
## Unjust Enrichment
### (*Plaintiff T.R. v. Defendants*)

123. *Plaintiff* incorporates the foregoing paragraphs as though fully set forth herein.

124. By laboring and/or providing services for *Defendants*, *Plaintiff T.R.* conferred a benefit(s) upon *Defendants*.

125. *Defendants* appreciated the benefit(s) conferred upon them by *Plaintiff T.R.*

126. *Defendants* accepted and retained the benefit(s) conferred upon them by *Plaintiff T.R.*

127. *Plaintiff T.R.* was not compensated for the labor provided to *Defendants*.

128. *Defendants'* unjust failure to pay *Plaintiff T.R.* prevailing wages for the labor and/or services provided to them constitutes distinct detriments to *Plaintiff T.R.*

129. Accordingly, *Plaintiff T.R.* is entitled to monetary damages equal to the reasonable value of labor provided to *Defendants*.

## JURY TRIAL DEMAND

*Plaintiffs* hereby demand a trial by jury on all issues so triable.

## DEMAND FOR RELIEF

WHEREFORE, based on the foregoing, *Plaintiffs* respectfully request judgment in their favor and against all *Defendants* as follows:

1. Compensatory and special damages in an amount to be proven at trial;

2. Unpaid wages, including minimum wages and overtime premiums, in an amount to be proven at trial;

3. Statutory penalties and liquidated damages according to proof at time of trial;

4. Punitive and exemplary damages in an amount according to proof at the time of trial;

5. Pre- and post-judgment interest;

6. Reasonable attorneys' fees and costs; and

7. Such other and further relief as this Court deems just and proper.

Respectfully Submitted,

**ANDREOZZI + FOOTE**

Dated: February 22, 2022

*/s/ Renee E. Franchi, Esq.*
Renee E. Franchi, Esq. (PA #313950)
renee@vca.law
Nathaniel L. Foote, Esq. (PA #318998)
nate@vca.law
4503 North Front Street
Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143
*Attorneys for Plaintiffs*