**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| D.C. and R.M. | |
| *Plaintiffs,* | |
| v. | CIVIL ACTION<br>NO. 5:21-cv-05070-JMG |
| NELSON MARTIN d/b/a LIBERTY RIDGE FARM, LIBERTY RIDGE FARM, EASTERN PENNSYLVANIA MENNONITE CHURCH AND RELATED AREAS, and MENNONITE MESSIANIC MISSION OF THE EASTERN PENNSYLVANIA MENNONITE CHURCH, | |
| *Defendants.* | |

## <u>ORDER</u>

AND NOW this _____ day of _____ 2023 upon consideration of the Motion for

Summary Judgment of Defendants Nelson Martin d/b/a Liberty Ridge Farm, Liberty Ridge

Farm, Eastern Pennsylvania Mennonite Church and Related Areas, and Mennonite Messianic

Mission of the Eastern Pennsylvania Mennonite Church ("Defendants"), and any response

thereto, it is hereby ORDERED and DECREED that said Motion is granted.

_____J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| D.C. and R.M.<br><br>*Plaintiffs,*<br><br>v.<br><br>NELSON MARTIN d/b/a LIBERTY RIDGE FARM, LIBERTY RIDGE FARM, EASTERN PENNSYLVANIA MENNONITE CHURCH AND RELATED AREAS, and MENNONITE MESSIANIC MISSION OF THE EASTERN PENNSYLVANIA MENNONITE CHURCH,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 5:21-cv-05070-JMG |

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Nelson Martin d/b/a Liberty Ridge Farm[1], Liberty Ridge Farm, Eastern Pennsylvania Mennonite Church and Related Areas, and the Mennonite Messianic Mission (collectively and hereinafter "Defendants"), by their counsel, Meghan Wynkoop of Margolis Edelstein, file the within Motion for Summary Judgment and in support thereof state as follows:

1. The Mennonite Messianic Mission organized the creation of Liberty Ridge Farm, by appointing a committee of church members to determine a solution for the issues that parents in the Mennonite community were having with caring for their children. <u>See</u>

---

[1] Plaintiffs incorrectly classify Defendant Nelson Martin as "doing business as" Liberty Ridge Farm. Defendants have adopted Plaintiffs' classification for purposes of this Motion only, and Defendants' adoption of same is not an admission of fact.

Exhibit C, Deposition of Nelson Martin 17:25, 18:8. <u>See</u> <u>also</u> Exhibit F, Deposition of Gerald Nolt 24:10.

2.  The Eastern Pennsylvania Mennonite Church and Related Areas is not a legally registered entity. It is "a name which was chosen for a group of believers that practiced the same things . . . there is no structure, but each congregation has a structure in their congregation . . . voluntarily these congregations can ask to be a part of the Eastern Pennsylvania Mennonite Church." <u>See</u> Exhibit J, Deposition of Dana Ressler, 13:11, 14:14.

3.  The Liberty Ridge Farm committee occasionally reported to the Mennonite Messianic Mission with updates, and to seek approval for certain personnel decisions and expenditures. The Mennonite Messianic Mission was otherwise hands off in the day-to-day operations of Liberty Ridge Farm. <u>See</u> Exhibit C, 20:5, 47:24, 48:4, 92:15.

4.  Membership on the Liberty Ridge Farm Committee, like other service-based committees within the organization, was unpaid and voluntary. <u>See</u> Exhibit C, 52:6.

5.  The Township of Fayette approved the use of the farm to be a boys' home. <u>See</u> Exhibit C 27:20.

6.  Liberty Ridge Farm became operational in 2011. <u>See</u> Exhibit C, 45:17.

7.  Plaintiffs' families placed them in Liberty Ridge. <u>See</u> Exhibit A, Deposition of David Cross 23:5-13, 28: 6-10. <u>See</u> <u>also</u> Exhibit B, Deposition of Robert Miller 20:18.

8.  Plaintiff David Cross was the first resident at Liberty Ridge Farm. <u>See</u> Exhibit A, 29: 23-24.

9.  Robert Miller was the second resident at Liberty Ridge Farm. <u>See</u> Exhibit B, 31:11.

10. Both Plaintiffs were sent to Liberty Ridge Farm because their families struggled to care for them. <u>See</u> Exhibit B 11:12. <u>See also</u> Exhibit C, 17:25.

11. Nelson Martin was the treasurer of Liberty Ridge Farm and a member of the Liberty Ridge Farm committee. <u>See</u> Exhibit C, 41:23, 42:12.

12. Nelson Martin did not direct activities at Liberty Ridge Farm, and he was only on the premises occasionally. <u>See</u> Exhibit A, 48:3-12. <u>See also</u> Exhibit B, 41:11-18.

13. Plaintiffs' guardians completed applications to send them to Liberty Ridge Farm, as well as power of attorney documents, and consented to the programming at Liberty Ridge Farm. <u>See</u> Exhibit D.

14. Plaintiffs' guardians paid monthly tuition payments to Liberty Ridge Farm during their residency. <u>See</u> Exhibit B, 30:11. <u>See also</u> Exhibit C, 93:18.

15. Residents at Liberty Ridge were responsible for completing chores, including tending chickens and tending a garden. <u>See</u> Exhibit B, 32:17, 33:9, 14-16.

16. Plaintiffs received consequences for being disrespectful to Liberty Ridge staff and generally defiant. <u>See</u> Exhibit A, 41:24, 42:1-12.

17. Consequences included writing sentences and digging post holes for fences on the property. <u>See</u> Exhibit A, 40:17, 41:15. <u>See also</u> Exhibit B, 44:3.

18. Consequences were not given because work was not completed, but instead, because a resident was disrespectful and/or defiant. <u>See</u> Exhibit B, 43:16.

19. The only instances of "physical restraint" used against a resident was in response to a resident becoming physically violent against Liberty Ridge staff, rather than for failing to perform chores. <u>See</u> Exhibit A, 112:16, 114:2-13.

20. Plaintiff D.C. became violent towards staff on multiple occasions. <u>See</u> Exhibit A, 45:2, 6-23.

21. Neither Plaintiff ever performed the consequence of running laps as alleged in their Complaint. <u>See</u> Exhibit A, 42:22, 111:18.

22. Neither Plaintiff was subjected to corporal punishment during their time at Liberty Ridge Farm. <u>See</u> Exhibit B, 40:1.

23. Both Plaintiffs were subjected to corporal punishment while still living with their families. <u>See</u> Exhibit A, 56:7, 115:5. <u>See</u> <u>also</u> Exhibit B, 29:4, 39:14.

24. Plaintiffs received an education during their time at Liberty Ridge Farm. <u>See</u> Exhibit A, 51:13, 52:12, 53:9. <u>See</u> <u>also</u> Exhibit I.

25. Plaintiffs participated in recreational activities while enrolled at Liberty Ridge Farm. <u>See</u> Exhibit A, 37:16-24. 38:4. <u>See</u> <u>also</u> Exhibit B, 38:17.

26. Plaintiff D.C. had access to a psychiatrist. <u>See</u> Exhibit A, 47:7, 84:5.

27. Good behavior by the Liberty Residents was noticed and awarded. <u>See</u> Exhibit A, 38:14.

28. Liberty Ridge did not solicit families to enroll their children to the program. <u>See</u> Exhibit E, Deposition of Mark Torkelson 36:14. <u>See</u> <u>also</u> Exhibit G, Affidavit of Bill Cross, Father of Plaintiff D.C.

29. Families were able to visit their children while enrolled in Liberty Ridge. <u>See</u> Exhibit A, 33:18.

30. Residents were able to communicate with their families during their time at Liberty Ridge. <u>See</u> Exhibit A, 33:24.

31. Families signed powers of attorney when enrolling their children at Liberty Ridge, thereby allowing Liberty Ridge to assume responsibility over the children. See Exhibit G.

32. The purpose of sending children to Liberty Ridge was to prepare residents to be productive members of society by becoming respectful, disciplined, and spiritually strong. See Exhibit B, 21:8.

33. Plaintiffs assisted in tending a garden that provided food for them during their time at Liberty Ridge Farm. See Exhibit A, 39:20. See also Exhibit B, 37:16

34. Plaintiffs did not have the expectation to be paid for their tasks. See Exhibit A, 37:6. See also Exhibit B, 39:10.

35. Plaintiffs' parents did not have the expectation that their children would be paid for their tasks. See Exhibit G, Affidavit of Bill Cross.

36. Plaintiffs were engaged in chores similar to what they allege in their pleadings prior to enrolling in Liberty Ridge Farm. See Exhibit A, 31:4-9. See also Exhibit B, 30:19, 38:7.

37. Plaintiffs learned vocational skills they did not previously have before enrolling in Liberty Ridge Farm. See Exhibit A, 35:22. See also Exhibit B, 39.

38. Plaintiff D.C., prior to becoming aware of the potential of a lawsuit, wrote a letter to other residents of Liberty Ridge Farm, expressing his appreciation for Liberty Ridge and encouraging them to stay the course, because Liberty Ridge was a place "to keep you from coming to jail." See Exhibit A, 49:15. See also Exhibit H.

39. The only causes of action left in this lawsuit are Counts I, II, and IV, as the RICO claim and the unjust enrichment claims were dismissed, along with Plaintiff T.R. <u>See</u> ECF Nos. 15 and 32.

40. The TVPA prohibits a party from knowingly providing or obtaining a person's labor —or attempting to do so—by means of threats of physical restraint, serious harm, abuse of law or legal process, or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor  or services, that person or another person would suffer serious harm or physical restraint." <u>18 U.S.C. § 1589(a)</u>. The purposes of the TVPA are to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims. <u>See</u> Exhibit K.

41. The TVPA has been contemplated in cases such as United States v. Calimlim, (defendants concealed their Philippine housekeeper and kept her in bondage for 19 years), <u>United States v. </u>Dann, (defendant brought immigrant nanny into the country but treated her like a slave, taking her visa from her and taking other steps to ensure she would not leave), and United States v. Marcus (defendant forced victim to maintain a profile on a BDSM website and physically and/or sexually punished her if she failed to meet certain goals and metrics.). <u>See</u> Exhibits L, M, and N, respectively.

42. F.R.C.P. 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

43. In interpreting F.R.C.P. 56, the United States Supreme Court has held:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

44. Accordingly, the inquiry on a motion for summary judgment is not simply whether issues of fact exist, but rather whether any issues of "material fact" exist. See Anderson v. Liberty Lobby, 477 U.S. 242, 247-248 (1987) ("[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

45.  In order to defeat a motion for summary judgment, it must be shown that the disputed facts are "material" to the outcome of the case.  See id., at 248.

46. Additionally, any disputed issue of material fact must be "genuine."  In Matsushita Electric Indus. Co., the Supreme Court of the United States held that when the moving party has carried its burden under F.R.C.P. 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  See 475 U.S. 574, 586 (1986).

47. An inference based on speculation or conjecture does not create a genuine issue of material fact.  See Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990).

48. At this stage, a plaintiff can no longer rest on mere allegations, but must set forth evidence of the specific facts which will be taken as true for purposes of summary judgment; at the final stage, those facts, if controverted, must be supported adequately by the evidence adduced at trial. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

49. While all reasonable inferences must be drawn in favor of the nonmoving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

50. Moreover, the adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989).

51. In Pennsylvania, punitive damages "are awarded only for outrageous conduct, that is, for acts done with a bad motive or with reckless indifference to the interests of others." SHV Coal, Inc. v. Cont'l Grain Co., 526 Pa. 489, 587 A.2d 702, 705 (Pa. 1991) (quoting Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355, 358 (1963)).

52. As the Supreme Court of Pennsylvania described, Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Punitive damages must be based on conduct which is "malicious," "wanton," "reckless," "willful," or "oppressive." Further, one must look to the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties. The state of mind of the actor is vital.

The act, or the failure to act, must be intentional, reckless, or malicious, (internal citations omitted).Feld v. Merriam, 506 Pa. 583, 485 A.2d 742, 747-48 (Pa. 1984); see also Brand Mktg Grp. LLC v. Intertek Testing Servs., N.A., Inc., 801 F.3d 347, 360 (3d Cir. 2015) ("'[T]o justify an award of punitive damages, the fact-finder must determine that the defendant acted with a culpable state of mind,  i.e., with evil motive or reckless indifference to the rights of others.'" (quoting Hutchinson v. Penske Truck Leasing Co., 2005 PA Super 179, 876 A.2d 978, 983-84 (Pa. Super. Ct. 2005)).

53. Therefore, punitive damages "are not justified where the defendant's mental state rises to no more than gross negligence." SHV Coal, 587 A.2d at 705.

54. To succeed on a claim for punitive damages, a plaintiff must produce sufficient evidence to establish that "(1) a defendant had subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Hutchison v. Luddy, 582 Pa. 114, 870 A.2d 766, 772 (Pa. 2005).

55.  The Third Circuit has recognized that a district court may determine punitive damage claims on summary judgment. Vitalis v. Sun Constructors, Inc., 481 Fed. Appx. 718, 729 (3d Cir. 2012) (citing Pichler v. UNITE, 542 F.3d 380, 387 (3d Cir. 2009) ("If, on remand, the District Court determines that summary judgment is appropriate as to plaintiffs' punitive damages claim, then a trial will be unnecessary."); Cochetti v. Desmond, 572 F.2d 102, 103 (3d Cir. 1978) ("As to the claim for punitive damages, we conclude that on the record before the district court summary judgment was proper[.]")).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| D.C. and R.M. | |
| *Plaintiffs,* | CIVIL ACTION<br>NO. 5:21-cv-05070-JMG |
| v. | |
| NELSON MARTIN d/b/a LIBERTY RIDGE FARM, LIBERTY RIDGE FARM, EASTERN PENNSYLVANIA MENNONITE CHURCH AND RELATED AREAS, and MENNONITE MESSIANIC MISSION OF THE EASTERN PENNSYLVANIA MENNONITE CHURCH, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| *Defendants.* | |

MARGOLIS EDELSTEIN

BY:     /s/ Meghan Wynkoop, Esquire
          MICHAEL R. MILLER, ESQUIRE
          Identification No.
          MEGHAN WYNKOOP, ESQUIRE
          Identification No.
          The Curtis Center, Suite 400E
          170 S. Independence Mall W.
          Philadelphia, PA 19106-3337
          Telephone: (215) 922-1100
          *Attorneys for Nelson Martin, et al*

Date: January 20, 2023

## TABLE OF CONTENTS

**TABLE OF CONTENTS**………………………………………………………………. 12

**TABLE OF AUTHORITIES**……………………………………………….. 13

   **I.  INTRODUCTION**………………………………………………. 14

   **II.  PROCEDURAL HISTORY**………………………………………… 15

   **III. STATEMENT OF FACTS**…………………………………………..15

   **IV. LEGAL ARGUMENTS**……………………………………………...17

       **A.  Standard of Review**…………………………………………17

       **B.  Defendants are Entitled to Summary Judgment on Plaintiffs' Claims**……..19
            **i.  Overview of Claims**……………………………………………19
           **ii.  Liberty Ridge Farm was created for spiritual growth, not labor**…………………………………………………….21
          **iii.  Residents of Liberty Ridge Farm Were Not Solicited…………………22
          **iv.  This is Not the Type of Activity the TVPA Contemplated Punishing**……………………………………………...…23
           **v.  Defendants are Entitled to Summary Judgment as it Pertains to the Plaintiffs' Punitive Damages Claim**…………………………25

   **V.  REQUESTED RELIEF**……………………………………………26

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, 477 U.S. 242 (1986)

Celotex Corp. v, Catrett, 477 U.S. 317 (1986)
Katz v. Aetna Cas.  Sur. Co., 972 F.2d 53 (3d Cir. 1992)

Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965(3d Cir. 1982)

Lawrence v. City of Phila., 527 F.3d 299 (3d Cir. 2008)

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)

Rains v. Cascade Indus., Inc., 402 F.2d 241(3d Cir. 1968)

United States v. Calimlim, 538 F.3d 706 (7th Cir. 2008)

United States v. Dann, 652 F.3d 1160 (9th Cir. 2011)

United States v. Marcus, 628 F.3d 36 (2d Cir. 2010)

## STATUTES

18 Pa.C.S. § 3001

18 U.S.C. § 1589

18 U.S.C. § 1590

## OTHER

F.R.C.P. 56(a)

## I.  <u>INTRODUCTION</u>

Plaintiffs D.C. and R.M. were both former residents at Liberty Ridge Farm (hereinafter "Liberty Ridge"), a farm-style boys' home facility aimed at improving spiritual and relational outcomes for young men struggling with discipline and their interpersonal skills.

Plaintiffs' Complaint alleges that Defendants willfully violated the TVPA and 18 Pa.C.S. § 3001 because Defendants were engaged in a scheme meant to recruit, coerce, and exploit young men for free labor. Plaintiffs further allege that Defendants benefited from Plaintiffs' forced labor.

Plaintiffs further alleged that they were mentally and emotionally damaged as a result of this alleged scheme.

However, the undisputed testimony from both Plaintiffs reveals that they both struggled with discipline and respect, were aware of these issues, and their families were struggling to care for them due to these issues. Because of this, both Plaintiffs' families affirmatively enrolled them as residents at Liberty Ridge and were not in fact sought out by Defendants. It is also undisputed that Plaintiffs were not subjected to all of the consequences they alleged in their Complaint. The consequences they were subjected to were in direct response to disrespect, not a failure to perform labor, and none of the consequences were related to commercial activities. Additionally, the chores complained of were but a fraction of the programming Plaintiffs experienced during their time at Liberty Ridge, as they both received schooling and took part in recreational activities, along with vocational skills training. Finally, the undisputed testimony has revealed that physical restraint was only ever used in response to Plaintiff D.C. becoming physically violent and threatening, not as a consequence of failure to perform any sort of task or chore.

## II.  PROCEDURAL HISTORY

The salient procedural history is summarized as follows: On or about November 17, 2021, Plaintiffs filed a Complaint in this Court against Nelson Martin, Liberty Ridge Farm, Eastern Pennsylvania Mennonite Church, and the Mennonite Messianic Mission of the Eastern Pennsylvania Mennonite Church. See ECF No. 1. On March 3, 2022, Plaintiffs filed an Amended Complaint against the Defendants. See ECF No. 11. Defendants timely filed a motion to dismiss Plaintiffs' Amended Complaint on April 1, 2022. See ECF No. 12. Plaintiffs filed a Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint on April 15, 2022.  See ECF No. 13. A joint stipulation was filed withdrawing Count III from the Complaint; the RICO claim. See ECF 15. The Motion was withdrawn on April 28, 2022. See ECF No. 16.

Defendants timely filed an Answer to Plaintiffs' Amended Complaint. See ECF No. 18. On August 9, 2022, Count V of the Complaint was dismissed, and Plaintiff T.R., a minor, by J.R. was withdrawn from the lawsuit. See ECF No. 31. The stipulation for his withdrawal included the withdrawal of Count V of the Complaint; the unjust enrichment claim. Finally, Defendants proceeded to file an Amended Answer to Plaintiffs' Amended Complaint. See ECF No. 36.

During the time since the initial Complaint being filed, parties have completed discovery and conducted all depositions for this matter.

## III. STATEMENT OF FACTS

Determined to meet a growing need in the Mennonite community, the Mennonite Messianic Mission created a committee to investigate solutions for families who were struggling to care for their adolescent sons. See Exhibit C, 17:25, 18:8. See also Exhibit F, 24:10. Years in

the making, Liberty Ridge Farm was a culmination of efforts amongst the Mennonite community, and it opened its doors to its first resident in 2011. See Exhibit C, 45:17.

Plaintiffs were former residents of Liberty Ridge Farm, located in Juniata County, Pennsylvania. Both Plaintiffs have admitted that they were sent to Liberty Ridge because their parents and families struggled to care for them, due to their poor interpersonal skills, behavioral issues, and overall poor spiritual health. See Exhibit B 11:12. See also Exhibit C, 17:25. Neither of these Plaintiffs were specifically sought out or recruited by Defendants to join Liberty Ridge. See Exhibit E, 36:14. See also Exhibit G, Affidavit of Bill Cross, Plaintiff D.C.'s father.

While residents at the farm, Plaintiffs were required to engage in household and farm chores, including tending chickens and a garden that grew crops for the residents to consume. See Exhibit B, 32:17, 33:9, 14-16.  These chores were similar to those performed while living with their respective guardians, prior to enrolling at Liberty Ridge Farm.

Plaintiffs, in their Amended Complaint, have alleged several consequences they endured while residents at Liberty Ridge. See ECF No.11. Some of the consequences alleged, such as running laps, were not actually performed by these Plaintiffs, as admitted in their depositions, and therefore these allegations are no longer in dispute. See Exhibit A, 42:22, 111:18.

It has been determined through discovery that, much like living at home, there were consequences when residents would resist authority or be otherwise disrespectful or defiant. See Exhibit A, 41:24, 42:1-12. These consequences included writing sentences and assisting in general home improvement projects and did not include any tasks that had an impact on the stream of commerce. See Exhibit A, 40:17, 41:15. See also Exhibit B, 44:3. Moreover, unlike the experience at Plaintiffs' own homes when they were disrespectful or defiant, the consequences at Liberty Ridge Farm never included corporal punishment.

Plaintiffs allege that they suffered mental and emotional harm at the hands of the Defendants, and that they were victims of human labor trafficking, pursuant to the TVPA and 18 Pa.C.S. § 3001 *et seq*. However, both Plaintiffs have acknowledged that Liberty Ridge in fact had a positive influence on their lives. For example, Plaintiff R.M. is currently utilizing the vocational skills he learned at Liberty Ridge Farm in his career, and is on track to obtain his arborist certification. <u>See</u> Exhibit B, 16:22. Prior to his current job, R.M. only ever mentioned having experience with logging and preparing firewood while a resident at Liberty Ridge. Further, Plaintiff D.C., unprompted and prior to learning about the potential of a lawsuit, wrote a letter to Liberty Ridge residents expressing his appreciation for Liberty Ridge and encouraging them to stay the course, because Liberty Ridge was a place "to keep you from coming to jail." See Exhibit A, 49:15. <u>See</u> <u>also</u> Exhibit H.


## IV. <u>LEGAL ARGUMENT</u>

### A.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states "[t]he Court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). The rule mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See</u> <u>Celotex Corp. v, Catrett</u>, 477 U.S. 317, 322 (1986). A factual dispute is "material" only if it might affect the outcome of the case. <u>See</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. <u>Id.</u>

In interpreting F.R.C.P. 56, the United States Supreme Court has stated that the rule mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas.  Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992). The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Celotex, supra. Moreover, the inquiry on a motion for summary judgment is not simply whether issues of "fact" exist, but rather whether any issues of "material fact" exist. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48, 106 S. Ct. 250, 91 L.Ed.2d 202 (1987). In other words, it is not enough for a party opposing summary judgment to demonstrate that a factual dispute exists. Instead, the opposing party must demonstrate that the dispute is "material" to the outcome of the case. In Anderson, the United States Supreme Court Commented:

> [a]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.
> Anderson, 477 U.S. at 248.

On summary judgment, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's

claim." <u>Celotex Corp.</u>, 477 U.S. at 323. Once the moving party carries this initial burden, the

non-moving party must "come forward with specific facts showing that there is a genuine issue

for trial." <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 578. The non-moving party must present

something more than mere allegations, general denials, vague statement, or suspicions.

<u>Fireman's Ins. Co. of Newark v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-

moving party must put forth specific facts and "affirmative evidence in order to defeat a properly

supported motion for summary judgment." <u>Anderson</u> 477 U.S. at 257.

Notably, "[t]he rule is no different where there are cross-motions for summary

judgment." <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008). As the Third Circuit

has stated, "[c]ross-motions are no more than a claim by each side that it alone is entitled to

summary judgment, and the making of such inherently contradictory claims does not constitute

an agreement that if one is rejected the other is necessarily justified or that the losing party

waives judicial consideration and determination whether genuine issues of material fact exist."

<u>Id.</u> (quoting <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968)).

Finally, with respect to punitive damages claim, punitive damages may only be awarded

"where the injurious act is willful, malicious, or wanton" due to "defendant's evil motive or his

reckless indifference to the rights of others . . ." <u>In re TMI Metro. Edison Co.</u>, 67 F.3d 1119,

1124 (3d Cir. 1995), <u>citing</u> <u>Feld v. Merriam</u>, 506 Pa. 383, 485 A.2d 742, 747-48 (Pa. 1984). If a

Plaintiff fails to meet this burden, the plaintiff cannot be awarded punitive damages. <u>Id.</u>

## B.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS

### i.  <u>Overview of Claims</u>

18 U.S.C. § 1589(a) prohibits anyone from knowingly providing or obtaining the labor or

services of a person by any of the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint
to that person or another person;
(2) by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or
(4) by means of any scheme, plan, or pattern intended to cause the person to believe
that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

Count I of Plaintiffs' Complaint alleges a violation of 18 U.S.C. § 1589 under the TVPA. Specifically, Plaintiffs allege that Defendants subjected Plaintiffs into forced labor by knowingly providing or obtaining the labor and services of Plaintiffs by means of force, threat of force, physical restraint, and/or threats of physical restraint to Plaintiffs. See ECF No. 1. Plaintiffs allege that Defendants knowingly benefitted financially by receiving anything of value from participating in a venture which has engaged in the providing or obtaining of forced labor or services. See id.

Count II of Plaintiffs' Amended Complaint alleges that Defendants are liable under 18 U.S.C. § 1590. The statute prohibits knowingly facilitating and participating in the use of persons of labor or services. Section 1590 states that "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both . . ." 18 U.S.C. § 1590. The statute prohibits knowingly facilitating and participating in the use of persons for labor or services.

Count IV of Plaintiffs' Amended Complaint raises the same allegations under the Pennsylvania Law against Human Trafficking, at 18 Pa.C.S. § 3001 *et seq*. Pennsylvania largely tracks the federal guidance of the TVPA, discussed *supra*, therefore, the analyses discussed *infra*

regarding the TVPA are incorporated by reference into Plaintiffs' claims under 18 Pa.C.S. § 30001 *et seq*.

Plaintiffs have not offered any evidence to substantiate their claims under any of these human trafficking statutes, and, accordingly, each claim must be dismissed.

### ii.   Liberty Ridge Farm was created for spiritual growth, not for labor.

The fundamental purpose of Liberty Ridge Farm was to assist young men on their spiritual journey and provide relief to parents and families who were struggling to care for their children. The goal of Liberty Ridge was to send struggling young men back into society equipped with the tools they need to be successful. These tools include nontangible skills, such as socioemotional skills and learning how to relate well with others, and also tangible, vocational skills.

With this in mind, Plaintiffs have not, and cannot, establish that Defendants knowingly engaged in an enterprise by which they solicited children to provide forced labor. They are unable to do this because the undisputed evidence and testimony does not equate to the requisite mental state or the presence of force required under the TVPA.

Deposition testimony has confirmed that any "physical restraint" used on Plaintiffs (specifically, Plaintiff D.C. because R.M. has not alleged any physical restraint) was in response to Plaintiff becoming physically violent against Defendants or other Liberty Ridge staff. Additionally, the consequences complained of in the Complaint and throughout discovery were given as a response to backtalk or disrespect, not in response to a resident's failure to engage in "labor." Liberty Ridge staff was authorized to stand *in loco parentis* over the residents, which is evidenced by the fact that the parents (i) completed an application for their children to enroll in Liberty Ridge; and (ii) signed power of attorney documents allowing Liberty Ridge staff to

effectuate the continued care of their children. Liberty Ridge was providing a service to the parents in the community, and the parents initiated the process of enrolling their children.

Additionally, the specific consequences complained of were not labor consequences. In fact, these consequences had no impact on the stream of commerce at all. It is undisputed that these consequences included writing sentences, writing essays, and digging post holes for fences. These consequences are a far cry from what the Plaintiffs experienced in their home lives, where both were subjected to extreme corporal punishment. Neither Plaintiff was subjected to corporal punishment during their time at Liberty Ridge Farm.

Defendants' claim that the fundamental purpose of Liberty Ridge was to be a place of social and spiritual enrichment is further supported by the fact that Plaintiffs received schooling during their time at Liberty Ridge. Plaintiffs testified to receiving bible school classes, as well as standard classes, including math, social studies, and penmanship.

Finally, Plaintiffs' own argument about Liberty Ridge fails on a fundamental level, because, as they admitted, they were engaged in similar activity on their families' farms and within their families' businesses. Both Plaintiffs have established that assisting with farm chores and other industrial chores is a common tenet of the Mennonite faith and culture.

### iii.  Residents of Liberty Ridge Farm Were Not Solicited

Application of 18 U.S.C. § 1590 and the 18 Pa.C.S. § 3001, *et seq* requires that Defendants recruit individuals for the purpose of performing labor. These claims must fail if a plaintiff cannot establish any sort of solicitation or recruitment referable to the alleged labor trafficking. It has been established that there was no solicitation or recruitment of Plaintiffs, or any other resident of Liberty Ridge. See Exhibit G. In fact, Bill Cross, parent of D.C., submitted a sworn affidavit where he stated that he "voluntarily enrolled [his] son into Liberty Ridge Farm

because [he] was struggling to care for him," he "believed Liberty Ridge Farm would be a good place for [his] son to improve on his discipline and social skills," he "sent tuition payments on a monthly basis," and he "was neither solicited nor coerced to enroll" his child in Liberty Ridge. Id. Parents and families for these Plaintiffs were at their wits end, and struggled to care for their children, a fact to which both Plaintiffs testified. In fact, families within the Eastern Pennsylvania Mennonite Church community approached Church leadership to ask for support, and it was only then that the leadership ultimately brainstormed the concept for Liberty Ridge. This organization was a direct result of community outcry for assistance in caring for young men who struggled with everyday life. Notably, this timeline of events has not, and cannot be disputed by any evidence produced by Plaintiffs during the course of this lawsuit, and therefore is not a fact in dispute for purposes of this Motion. Therefore, it cannot be said that Defendants recruited Plaintiffs or their families to join Liberty Ridge.

### iv.   This is Not the Type of Activity the TVPA Contemplated Punishing

The TVPA is the country's first comprehensive federal law that addresses trafficking in persons. The statutes provide a toolbelt to combat modern forms of slavery, domestically and internationally. The United States Department of State publishes an annual "Trafficking in Persons" Report, detailing the status of various trafficking schemes in the United States and abroad. See Exhibit P. The Report covers, for example, the trafficking of child soldiers in Yemen and other foreign countries. Id. The conduct of Defendants and operations of Liberty Ridge Farm falls outside of the scope of the severe conduct contemplated by the TVPA, because Plaintiffs were not subjected to involuntary servitude. Rather, Defendants assumed the responsibility of caring and nurturing these young men so that they could be contributing members of society.

The instant case can be distinguished from other cases arising under the TVPA throughout various jurisdictions. For example, in <u>Calimlim</u>, the Defendants arranged for the transfer of, 16-year-old Irma Martinez, a domestic helper to the United States from the Philippines pursuant to a fraudulent visa. <u>United States v.</u> Calimlim, 538 F.3d 706 (7th Cir. 2008). Defendants confiscated her passport, forced her to work 16-hour days, seven days a week, and greatly restricted her access to basic necessities and wages. Martinez was unable to speak or communicate in English for her first six years in the United States. <u>Id.</u> Defendants continued this arrangement for over 19 years. <u>Id.</u> This case is the exact type of harm the TVPA is meant to protect against. Martinez was effectively alone in the United States as a mere child, unable to speak the local language, and lured here under a fraudulent visa. <u>Id.</u> She was made to believe that she would be deported if she did not follow the family's directives, thereby stripping her of any apparent autonomy or access. <u>Id.</u> Martinez was wholly reliant on Defendants for her well-being.

Similarly, in <u>Dann</u>, Defendant arranged to bring Pena Canal, an immigrant nanny to the United States from Peru in order to care for their children. <u>United States v. Dann</u>, 652 F.3d 1160 (9th Cir. 2011). Once she arrived, Defendant "kept her passport, forbade her from speaking with anyone outside the home, and failed to pay her for two years, although she often promised that she would. <u>Id.</u> Defendant forced the nanny to sleep on the floor, limited her food intake, forced her to work 16-hour days, and became physically violent towards her. <u>Id.</u> Here again, Canal was threatened with deportation whenever she expressed opposition. <u>Id.</u>

By way of further illustration of the sort of behavior the TVPA contemplates punishing is the <u>Marcus</u> case. There, Defendant forced Jodi, the complainant, through the persistent threat of serious physical harm and actual physical and sexual harm, to create and maintain a commercial BDSM website from which only Defendant derived pecuniary gain. <u>United States v. Marcus</u>, 628

F.3d 36 (2d Cir. 2010). Jodi worked on the website for eight to nine hours a day, in addition to her full-time job. Id. When she did not perform to Defendants' standards, she was punished in brutal and gruesome ways. Jodi only continued her work on the website out of fear for Defendant, because Defendant lured Jodi away from her home state, and forced her to be reliant on him. Id.

In all of the above cases, Defendants forced the complainants to perform labor, through actual force and threats of force. Complainants in the above cases were all reliant on the Defendants for food, shelter, and general upkeep. In many ways, the Complainants had nobody else that they could turn to for support. They were effectively subjected to involuntary servitude. The instant case is highly distinguishable. Here, the Plaintiffs were placed in Liberty Ridge by their parents, their parents paid monthly tuition, and their parents could, at any time, visit their children and/or bring them home. Defendants did not exert force or the threat of force in order to effectuate certain actions by the Plaintiffs. This case is not a comparator to the above-referenced cases, because the undisputed activities undertaken by the Defendants were not the sort of activities contemplated by the TVPA.

### v.   Defendants are Entitled to Summary Judgment as it Pertains to the Plaintiffs' Punitive Damages Claim

Plaintiffs have failed to allege any facts indicating that the conduct of Defendants rose to a level requiring the award of punitive damages. In Pennsylvania, punitive damages may be awarded "where the injurious act is willful, malicious, or wanton" due to "defendant's evil motive or his reckless indifference to the rights of others . . ." *In re TMI Metro. Edison Co.*, 67 F.3d 1119, 1124 (3d Cir. 1995), *citing Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747-48 (Pa. 1984). Throughout discovery and depositions in this matter, Plaintiffs have not produced any evidence

which would potentially demonstrate a culpable state of mind on behalf of Defendants. Plaintiff

R.M. even admitted that he believed he was sent to Liberty Ridge "to help me . . . grow with my

spiritual walk . . . to build better relationships." <u>See</u> Exhibit B, 21:7. Plaintiff D.C., unprompted,

and after leaving Liberty Ridge, remarked "LRF is the place to keep you from coming to jail."

<u>See</u> Exhibit A, 49:15. Defendants acted for the purpose of "help[ing] troubled youth . . . youth

that are struggling with the issues of life." <u>See</u> Exhibit O, Deposition of Ethan Weaver, 34:24.

Accordingly, Defendants are entitled to summary judgment as it pertains to Plaintiffs'

unsupported punitive damages claims.

## V.  **RELIEF REQUESTED**

Accordingly, Defendants, Nelson Martin doing business as Liberty Ridge Farm, Liberty

Ridge Farm, the Mennonite Messianic Mission of the Eastern Pennsylvania Mennonite Church,

and the Eastern Pennsylvania Mennonite Church and Related Areas, by and through their

counsel Meghan Wynkoop, and Margolis Edelstein hereby request this Honorable Court to enter

and Order granting summary  judgment in their favor, or, in the alternative, granting partial

summary judgment in their favor on the issue of punitive damages.


Respectfully Submitted,
**MARGOLIS EDELSTEIN**

By:     <u>*/s/ Meghan Wynkoop, Esq.*</u>
MEGHAN WYNKOOP
Attorney for Defendants
**Nelson Martin, Liberty Ridge
Farm, the Mennonite Messianic
Mission of the Eastern
Pennsylvania Mennonite Church,
and the Eastern Pennsylvania
Mennonite Church and Related
Areaas**

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies the foregoing was filed via the Court's CM/EMF System on this 20th day of January, 2023, and served via ECF filing upon:

Renee E. Franchi, Esq. (PA # 313950)
renee@vca.law
Nathaniel Foote
nate@vca.law
Andreozzi + Foote
4503 North Front Street
Harrisburg, PA 17110
Ph: 717.525.9124
Attorneys for Plaintiffs

*/s/ Meghan Wynkoop, Esq.*