IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D.C. et al.,<br>            Plaintiffs,<br><br>v.<br><br>LIBERTY RIDGE FARM, et al.,<br>            Defendants. | CIVIL ACTION<br><br>Case No. 5:21-cv-05070 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

The *material facts* of this matter are not in dispute, and do not create a genuine issue for trial under the TVPA or Pennsylvania equivalent. This Court need not consider a theatrical recitation of any additional "facts" which are inconsequential to the claims at issue. With this in mind, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment only bolsters Defendants' arguments that 1) this is not a legitimate trafficking case; and 2) there are no material facts in dispute, making this matter ripe for Summary Judgment.

***Plaintiffs' Opposition Misrepresents the Holdings of the Prior Cases, as No Court has Found TVPA Violations in Similar Circumstances***

Plaintiffs' Opposition states that "Courts around the United States have found TVPA violations under circumstances like Liberty Ridge." (See Opp. at 38). This is simply not true, and the cases cited by Plaintiffs are not determinative or pertinent to this Motion for Summary Judgment.

First, in <u>Bistline v. Parker</u>, the Tenth Circuit Court of Appeals contemplated whether the lower court was correct in determining that Plaintiff failed to state a claim upon which relief could be granted, as per the Motion to Dismiss standard. 918 F.3d 849, 870 (10th Cir. 2019), F.R.C.P 12(b)(6). That Court did not make any determinations of fact, and certainly did not make any

1

holdings based on the TVPA. In fact, Bistline was not even a case against a facility; rather, it was a breach of fiduciary duty and legal malpractice claim brought forth against attorneys pursuant to the Trafficking Victims Protections Reauthorization Act, or TVPRA.

Similarly, in Sherman v. Trinity Teen Sols., Inc., the Wyoming District Court *only* determined that Plaintiffs had plead enough to withstand a Motion to Dismiss. 2021 U.S. Dist. LEXIS 254753, F.R.C.P.12(b)(6)[1]. That Court, once again, did not make any holdings on the merits of the arguments, and in fact, has not yet determined whether the Plaintiffs produced sufficient facts to withstand a Motion for Summary Judgment.

Despite Plaintiffs' attempts to construe these cases as dispositive "TVPA violations under circumstances like Liberty Ridge," the actual procedural history of these cases further reinforces Defendants' position that the TVPA has not and should not be applied to these facts. Accordingly, because Plaintiffs have seemingly admitted there is no binding or persuasive authority supporting their position, this matter should be dismissed.

***Plaintiffs Attempt to Conflate the Issues of Forced Labor Under the TVPA with Consequences and Discipline, Despite the Undisputed Factual Distinctions***

As noted in the Opposition, civil liability for forced labor under the TVPA requires that the Defendants obtained labor by one of the following: force, threats of harm, abuse of legal process, or means of a scheme intended to cause the person to believe they would suffer serious harm or physical restraint. (See Opp. at 37). Plaintiffs attempt to argue that the Defendants' alleged "business enterprises" were profiting on the backs of forced labor by the Plaintiffs, because the Plaintiffs happened to experience consequences while at the Farm. However, this is not what the

---

[1] It should be noted, as this Court is aware, that the standard for a Motion to Dismiss under F.R.C.P. 12(b)(6) is vastly different from a Motion for Summary Judgment standard. Thus, the court determining that Plaintiffs' claims can withstand a Motion to Dismiss does not mean it is sufficient to overcome Summary Judgment.

2

undisputed facts in evidence reflect, and this Court is not required to read into the unsupported argument made by counsel.

Once again, even viewing all inferences in light most favorable to Plaintiffs[2], it is undisputed that the "consequences" performed by Plaintiffs were distinct from what Plaintiffs describe as "labor for profit." First, Plaintiffs admit that there was a difference between "vocational work" and "consequences." (See Opp. at 39). Plaintiffs state that "multiple related Mennonite Businesses utilized the Plaintiff's labor: Snyder Gates; Clark's Feed Mill…" (See Opp. at 44), and admit that Mentors oversaw Plaintiffs utilizing tools, skills which were ultimately applied in Plaintiffs' post-Liberty Ridge Farm occupations[3]. (See Opp. at 14)(See Plaintiffs' Exhibit L at 17). Plaintiffs then state that they were subject to physical consequences such as digging holes, digging drains, writing sentences, and breaking rocks into small pieces. (See Opp. at 16).

However, the undisputed testimony reflects that these consequences were in response to misbehavior and disrespect, much like one would experience at home[4], such as back talking and not paying attention at the Church devotional. (See Plaintiffs' Exhibit M at pg. 41-42). In fact, these consequences were indisputably less severe than those experienced at home by Plaintiffs, as both Plaintiffs testified that they received corporal punishment at home but never at Liberty Ridge Farm. (See Plaintiffs' Exhibit L at 39) (See Plaintiffs' Exhibit M at 56).

Further, Plaintiffs' Opposition references "physical restraint" numerous times, despite the undisputed testimony by both Plaintiffs and Defendants that physical restraint was not in response to a failure to perform profitable labor. Rather, Plaintiff D.C., the only Plaintiff claiming that he

---

[2] The Court need not accept counsel's recitation of testimony if the actual deposition testimony by Plaintiff is contradictory.
[3] There are no claims here for wage violations, so claiming that there was "unpaid labor" is irrelevant in the present case.
[4] As noted in Defendants' Motion, the Farm operated *in loco parentis*, as Plaintiffs' parents signed powers of attorney, and affirmatively consented to the Plaintiffs' participation in vocational tasks and receipt of consequences. These facts are not in dispute.

experienced "restraint,"[5] was held on the ground once for attempting to strike a house parent with a digging iron, and once for, in light most favorable to the Plaintiff, misbehavior unrelated to any sort of profitable task or business involvement. (See Plaintiffs' Exhibit M at 113).

There is no testimony or evidence presented which indicate that the Plaintiffs received consequences for failing to perform the vocational tasks, or any duties related to the businesses, and the summary judgment standard does not require this Court to create a factual dispute when one does not exist. With these undisputed facts in mind, because the consequences complained of by Plaintiffs were separate and distinct from any "labor for profit," there are no sustainable violations here under the TVPA.[6]

***Plaintiff's Opposition Demonstrates an Intent to Move Forward on a Theory of Common Law Negligence Rather than Trafficking[7]***

Plaintiffs bring forth this lawsuit containing three counts of labor trafficking pursuant to the TVPA and Pennsylvania equivalent. However, the undisputed facts and testimony cited in Plaintiffs' own Opposition demonstrates that Plaintiffs are attempting to move forward on a theory of common law negligence, which has been waived as a separate cause of action and should not be considered by a jury.

Plaintiffs' Opposition contains 32 pages of "facts," most of which are wholly immaterial to whether Defendants are liable under the TVPA, and thus, are not genuinely in dispute for purposes of this motion. The TVPA to its core deals with "forced labor." Whether Mentors were "appropriately trained" in dealing with at-risk youth or children with mental health disorders is

---

[5] Plaintiffs' opposition uses the plural form of "Plaintiffs" rather than distinguishing one Plaintiff from another. It should be noted that Plaintiff R.M. did not experience the same consequences as Plaintiff D.C., because as D.C. admits, he was violent with the house parents and mentors of Liberty Ridge Farm.

[6] It is a commonsense argument that digging post holes for a fence, writing sentences, and breaking rocks were not a profitable business enterprise.

[7] Plaintiffs argue that the TVPA invokes a negligence standard as to whether a Defendant "should have known" it was violating the TVPA; however, this is distinct from a common law negligence claim and should not be conflated.

4

immaterial. Taking it a step further, whether Liberty Ridge Farm was successful in its goals of preparing residents to be productive members of society, by teaching vocational skills or otherwise, has zero impact on the viability of a trafficking claim. These "facts" sounding in emotion do not create a genuine issue for trial under a theory of forced labor trafficking, as they do not relate to whether Defendants "knew or should have known" it was violating the TVPA. Plaintiffs could have moved forward on claims under common law, such as Negligence or Negligent Hiring, Training, and Supervision, and chose not to, and this Court should not be swayed by facts which are neither relevant, nor in genuine dispute.

### *Punitive Damages need not be a Jury Question*

Plaintiffs attempt to argue that Punitive Damages are definitively a jury question. This is incorrect. In fact, this Court has previously granted a Motion for Summary Judgment on the issue of punitive damages by concluding that as a matter of law, Plaintiffs did not adduce evidence sufficient to establish that Defendants' conduct was so outrageous so as to support an award of punitive damages. Thomas v. Staples, Inc., 2 F. Supp. 3d 647, 667 (E.D. Pa. 2014). Thus, this Court can consider whether the Plaintiffs in this case actually presented evidence to support their claims for punitive damages.

Here, because there is no allegation of evil motive on behalf of the Defendants, the appropriate inquiry is whether Plaintiffs have adduced evidence of reckless indifference. Pennsylvania cases have adopted a very strict interpretation of 'reckless indifference to the rights of others.' Martin v. Johns-Manville Corp., 508 Pa. 154, 494 A.2d 1088, 1096 (Pa. 1985). The plurality opinion in Martin established that punitive damages are only available when the defendant knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to, that

risk. Id. at 1097. "It is not enough for the plaintiff to show that a reasonable person in the defendant's position would have realized or appreciated the high degree of risk from his actions." Id. Instead, the plaintiff must produce some evidence that the person actually realized the risk and acted in conscious disregard or indifference to it." Id.

Plaintiffs have presented no facts during the course of litigation, or in their Opposition, which would adduce that Defendants realized any sort of risk involved with Plaintiffs. In fact, Plaintiffs' Opposition points out the significance of growing up in "small Mennonite communities," with "little-to-no "wordly" experiences [we take for granted]." (See Opp. at 37). If Plaintiffs intend to use this "fact" in support of their claims, they cannot turn around and ignore the same fact when it does not benefit them.

For the foregoing reasons, Defendants respectfully request that this Court grant its Motion for Summary Judgment in its entirety.

Respectfully submitted,

MARGOLIS EDELSTEIN

BY:   *Meghan Wynkoop, Esq.*
      MEGHAN WYNKOOP, ESQUIRE
      Identification No. 324242
      The Curtis Center, Suite 400E
      170 S. Independence Mall W.
      Philadelphia, PA 19106-3337
      Telephone: (215) 931-5828
      mwynkoop@margolisedelstein.com
      *Attorneys for Defendants*

Date: February 24, 2023